SIMEON COOK, EXECUTOR OF PETER SMITH, DECEASED, v. DAVID SMITH, SURVIVOR OF GARRET SMITH, DECEASED.

1. Where a witness testifies that he has often seen the plaintiff write, and that he takes his signature to a receipt offered in evidence to be genuine, and the court admits the receipt to go to the jury, this is *prima facie* evidence of the genuineness of the receipt; and if, without any further evidence upon the subject, the jury regard the receipt as a forgery, the verdict will be set aside as contrary to the evidence.

2. The seventh section of the act of 1854, *Nix. Dig.* 851, assessing the tax on the mortgagor, where the mortgagee resides out of the township, is not unconstitutional as impairing the obligation of contracts, and the oath of the collectors and their receipts are *prima facie* evidence of the proper payment of such tax.

This action was brought to recover the amount due on three several bonds, given by Garret Smith and David Smith

to Peter Smith, in his lifetime, each for the payment of one thousand dollars. The defendant pleaded payment, and gave notice of set-off. On the trial much evidence was offered to show partial payments at different times, and also to show the transactions and dealings of the parties in reference to the bonds. The jury rendered a verdict for the plaintiff for the sum of $3454.73. A rule to show cause why this verdict should not be set aside was granted, on application of the defendant, and was argued, in the term of June last, before VREDENBURGH, OGDEN and VAN DYKE, Justices, upon a state of the case agreed on by counsel.

As the grounds of this application and the principal facts relating thereto are sufficiently shown in the opinion of the court, it is deemed unnecessary to insert the case itself, which is of great length, and embraces many matters not brought in question on the argument of this rule.

Attorney for the plaintiff, *P. B. Kennedy.*

Attorney for the defendant, *J. G. Shipman.*

The opinion of the court was delivered by

VREDENBURGH, J. This was an action of debt brought in this court on three several bonds, dated the 1st July, 1847, for $1000 each, given by David and Garret Smith to Peter Smith, payable 1st April, 1851, with interest annually from 1st April, 1847.

The pleas were payment to Peter Smith, in his lifetime, and to the executors since his death, and notice of offset. The cause was tried at the Warren Circuit, December term, 1862, and a verdict for the plaintiff for $3454.73. The defendant now moves that the verdict be set aside, as being too large.

It appears, by the case, that one Peter Smith, the father of the defendant and of the plaintiff's testator, on the 1st of April, 1847, owned a farm and divers personal property in the township of Oxford, in said county of Warren, and then

sold it to his sons, Garret and David, for $8,000, and $60 per year paid unto the son, Aaron Smith, during the life of his father. Four thousand dollars of the said purchase money was paid for, by the work previously done by the defendants for their said father, and the remaining $4000 was paid for, by four several bonds for $1000 each, three of them payable to the father, with interest, and the other, the interest payable to the father during his lifetime, and the principal payable to Aaron at the death of the father.

Peter Smith, the father, died on the 11th October, 1860. The interest on the fourth bond, payable to Aaron Smith at the death of his father, was fully paid up by the defendants.

The questions in controversy therefore relate to the other three bonds, and the interest due on them.

The controversy is about the payments made on these three bonds and the offsets properly allowable against them.

The plaintiff claims that, on the 1st April, 1859, there was due, for principal on these three bonds, $2800, which, with the interest, $654.73, from that time until the 26th February, 1863, the time allowed by the jury, make the $3454.73 allowed by the jury. The defendant, on his side, insists that there was not due for principal on these three bonds, on the 1st April, 1859, the said sum of $2800, but some lesser sum. It appears that, on the 14th May, 1859, Peter Smith and Garret and David Smith got together, and looked over their accounts, and upon that occasion Peter Smith made the following endorsement on each of the three bonds : "Rec'd May 14, 1859, on the within bond the interest thereon in full to the 1st day of April last," and also a receipt on one of the bonds for $200 on the principal, as of the 1st April, 1859. This of course left due on the three bonds $2800, of principal, on the 1st April, 1859, which the plaintiff claims to be the true amount, and which the jury have allowed.

The controversy is whether this $2800, due as principal on the 1st April, 1859, is the true amount. The interest on the four bonds, from the 1st April, 1847, to the 1st April, 1859, twelve years, is $2880. On the 1st April, 1859, Peter

Smith received, as appears by *Exhibit No.* 4, $3080 on the bonds, which paid up the interest on the four bonds and $200 on one of the three bonds now in suit. This *Exhibit No.* 4 contains the items which make up the said $3080. The plaintiff contends that these are all the items that the defendant is entitled to. The defendant contends that they are not, but sets up that, besides these, he should be credited:

*First.* With a receipt of $240, dated April 2d, 1851, which he alleges was not brought into the account.

*Second.* The defendant claims that the payments over, are the amounts of interest due at the time they were paid, and which should, to that extent, be deducted from the principal.

*Third.* The defendant claims that he should be credited with his book account, which has not been done.

*Fourth.* The defendant alleges that he paid the taxes on the bond, which should be credited.

*First.* As to the $240 receipt, the receipt is in evidence. It is dated April 2d, 1851, and reads as follows:

$240. Received from David and Garret Smith two hundred and forty dollars, interest on account of bonds I hold against them." Signed " Peter Smith."

The plaintiff sets up, as to this receipt—first, that it is a forgery, and upon this point the evidence is that of William P. Robeson, who testifies: " I have often seen Peter Smith write, and take the signature to that receipt to be genuine. If the signature to this receipt had come to me in the course of business, I would not have hesitated to take it, from the general appearance of it." Whereupon the court admitted the paper. This is all the evidence there was at the trial, upon the genuineness of the receipt. If the jury rejected the receipt on the ground of its genuineness, their verdict is against the weight of evidence. It was proved in the ordinary way. It was not necessary for the defendant to prove more until it was to some extent impeached. If the jury rejected it as a forgery, they must have acted on evidence not sworn to before them.

It is next suggested that the jury rejected this receipt be-

cause they believed it had already been allowed by the defendant in the endorsement on the bonds of the 1st April, 1859. But, in the first place, the presumption would be, if it had been allowed then, it would have been taken up or referred to in some way, and not left outstanding, as this was, in the hands of the defendant entirely unexplained. But, in the next place, the evidence shows conclusively that it was not included in the endorsements of April 1st, 1859. The evidence upon the question, whether this $240 receipt was endorsed on the bond was, first, the endorsements themselves, which are in these words, " Rec'd May 16th, 1859, on the within bond, the interest thereon in full to the 1st day of April last."

It is contended by the plaintiff that this is *prima facie* evidence that this particular receipt was included. I do not see how so. So far as the simple endorsement goes, it does not appear that the defendant was present, or assented to it, or had anything to do with it. In the absence of any other proof, the presumption would be that the obligee only endorsed those payments for which there were no loose receipts standing out; and thus shows no presumption that this particular payment was endorsed, but the contrary thereof. The only other evidence that this receipt was included, is that of Aaron Smith, who says, " that in May or June, 1859, he saw the obligee and Simeon Cook go to the defendant's; the obligee and William Cook came back together; the obligee said he had been to defendant, and got a check of the defendant for $1000. I do not see how this shows, either that the defendant was present at any settlement in May, 1859, or that this receipt was endorsed, or that the defendant was present when endorsed. But if it does, then it also shows that, at said settlement, Simeon Cook was present, and acted as the agent of both parties in arranging and making the calculation. But if we are to consider this as evidence, then it is also evidence that on that occasion the defendant, the obligee, and Cook, the present plaintiff, were all present, and that Cook acted as agent of both parties.

The endorsements on the bonds are in Cook's handwriting. A paper, produced by the defendant, and marked *Exhibit No. 4*, is also in Cook's handwriting, and the same facts that establish the presumption that the defendant was present, and assented to the endorsement on the bond, also establish the fact that *Exhibit No. 4* was made then by Cook, as the agent of both parties, and delivered by him to the defendant as evidence of what was really taken into the computation, in making the endorsements on the bonds. This *Exhibit No. 4*, being thus authenticated, shows upon its face that this $240 was not taken into the calculation, for it shows the items which did make up the calculation, and this item is not among them; nay more, this *Exhibit No. 4* says, upon its face, that the loose receipts which were credited on said bonds were delivered to the obligee, whereas this receipt is produced by the obligor. If it had been credited, it would have been delivered up with the others.

It is manifest that this $240 receipt should have been allowed by the jury.

The next complaint of the defendant is, that the jury rejected the whole of his account. As to that part of it liable to be affected by the statute of limitations, the jury did right; as to that part of it not liable to the statute, the jury rightly rejected all charges for cash; as to the rest of the account, it is proved by the defendant's book of account; the book is proved and unimpeached, and supported by other evidence, and no evidence against it. It ought to have been allowed by the jury.

The next complaint is, that the jury disallowed the defendant's payment of taxes on the bond.

These taxes were, $16, December, 1857; $16, December, 1858; $16, December, 1855; $16, December, 1856; $16, December, 1859; $16, December, 1860; $16, December, 1861. These payments were proved by the collectors to whom they were respectively paid; two of the duplicates, for the years 1857 and 1858, were also read in evidence, showing

the assessments for these bonds. These payments were all rejected by the jury.

The court charged the jury that the law creating these taxes, having been passed after these bonds were given, impaired the obligation of contracts, and was therefore void, and charged that the jury should not allow the taxes, because there was no legal proof that they had been legally assessed.

First, was the tax law in question unconstitutional as regarded bonds made before its passage? These bonds were made in 1847; the taxes were for the years 1856 to 1861, inclusive. The law, *Nix. Dig.* 851, § 7,* provides that every person shall be assessed in the township where he resides for all the personal estate owned by him; provided that where the holder of a mortgage shall not reside in the same township where the mortgaged premises lie, the tax or the money secured shall be assessed against the mortgagor, and paid by him in the township where the lands lie, and the receipt of the collector shall be a legal payment for so much of the interest. Here the mortgagee lived in a different township, and the taxes were paid by the mortgagor. I cannot see in what sense such an assessment can be unconstitutional, without making all taxes whatever unconstitutional. It is a tax upon property—upon the bond and mortgage; it in no sense impairs the obligations of a contract; on the contrary, it affirms the contract, and taxes the subject for sustaining it.

In the second place, as to the charge of the court, that these taxes could not be allowed because no proof that they were legally assessed. As to the years 1857 and 1858, the duplicates were in evidence, and that is conclusive evidence of its proper assessment. As to the other years, the proof shows that if not assessed, it ought to have been, and the presumption is that the public officers performed their duty, and did do it. In the next place the mortgagor produced the receipts of the collectors, and their oaths that they were actually paid. The act, *Nix. Dig.* 851, § 7, says, " the receipt of the collector shall be a legal payment for so much of the

*Rev., p.* 1153, § 66; *p.* 1163, § 110.

interest." The law, therefore, expressly declares the receipt of the collector shall be a legal payment of so much of the interest. The mortgagor, therefore, showed a legal payment of so much of the interest, by express statutory enactment, and it was not necessary for the mortgagor to produce either the assessment or the duplicate. The jury should have allowed all these taxes.

The next complaint of the defendant is, that the jury calculated the interest on an erroneous principle. The jury, as is manifest from their verdict, made no reference to whether the payment overran the interest—they merely took as true the endorsement that the interest was paid up to the 1st April, 1859, and calculated interest afterwards. The plaintiff seeks to justify this by saying that, on the 1st April, there was a settlement between the parties, when they agreed to this mode of calculation, and that *ignorantia legis non excusat.*

But the difficulty is, there is no such settlement proved. If we reject *Exhibit No. 4,* there is no evidence that the defendant was present, or ever assented to any such calculation; and if we admit *Exhibit No. 4,* it shows upon its face that it was only a credit of such loose receipts as were delivered up to the obligee, and not a final settlement, or indeed any settlement at all, but only a credit of such loose receipts as were then produced. There was therefore nothing final, when the endorsements of interest were made, and the whole matter was left open. It was good as far as it went. It was a good endorsement for the receipts delivered up and the payments then made, but foreclosed no rights.

I think the jury should have allowed—first, the taxes to be credited on the interest, and on the interest only; second, this $240 receipt, as of its date; third, the book account, except what had been running over six years, and the charges for cash; and that, in calculating interest, the jury should have credited—first, the taxes upon the interest only; secondly, the payments, crediting from time to time

upon the principal so much of the payments as overran the interest.

If the plaintiff agrees to remit the damages in accordance with these principles, let the verdict be entered; if not, let it be set aside, and a *venire de novo* awarded.

OGDEN and VAN DYKE, Justices, concurred.

CITED in *State, Vail's Ex'rs, pros.*, v. *Runyon*, 12 *Vroom* 106.